UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David John,<br><br>   Plaintiff and Counter-Defendant,<br><br>v.<br><br>MainGate, Inc.,<br><br>   Defendant and Counter-Claimant. | Case No. 13-cv-1875 (SRN/JJK)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Kathryn K. Smith and Michael S. Sherrill, Sherrill Law Offices, PLLC, 4756 Banning Avenue, Suite 212, White Bear Lake, Minnesota 55110, for Plaintiff and Counter-Defendant.

Lora Mitchell Friedemann and Ted C. Koshiol, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, for Defendant and Counter-Claimant.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on MainGate Inc.'s Motion for Judgment on the Pleadings [Doc. No. 10]. For the reasons set forth below, the Court grants this motion.

## II. BACKGROUND

Defendant and Counter-Claimant MainGate, Inc. is a sports-focused merchandising and marketing company. (Answer and Countercl. ¶ 1 [Doc. No. 4]; Pl.'s Reply to Def.'s Countercl. ¶ 1 [Doc. No. 7].) MainGate sells purple hats with gold braids and white horns as Minnesota Vikings memorabilia. (Id.) In 2001, Plaintiff and

1

Counter-Defendant David John applied for a copyright registration for a "Vikings hat": a gold and purple hat with gold braids and white horns ("Copyright"). (Ex. A to Compl. [Doc. No. 1-1].)

### A. The First Lawsuit

In December 2010, John sued MainGate in this Court, Case No. 10-cv-4902 (SRN/JJK) ("First Lawsuit"), alleging that MainGate was infringing the Copyright. (Compl. ¶ 6 [Doc. No. 1].) MainGate denied infringement and alleged that the Copyright was invalid. (Countercl. ¶ 11 [Doc. No. 4]; Reply ¶ 11 [Doc. No. 7].)

On February 13, 2012, the parties participated in a settlement conference for the First Lawsuit before Magistrate Judge Jeffrey J. Keyes, and they reached a settlement agreement. The parties read the terms of the agreement into the court record:

> **MS. FRIEDEMANN**: . . . The first term of the settlement agreement is that Mr. John represents and warrants that he owns Copyright—the copyright reflected in copyright Registration Number VA 1-169-450 entitled "Vikings Hat," and I'll refer to that as "the copyright."
>
> Mr. John grants MainGate a license to the copyright.
>
> The monetary terms of the license are as follows:
>
> MainGate will pay $18,125 within 30 days of today's date and a second payment of $18,125 on or before October 1, 2012.
>
> MainGate may sell its existing inventory of the accused Helga Hats.
>
> Then going forward, all future Helga Hats, MainGate will pay a royalty of $3 per hat. Those royalties will be paid annually on or before January 30th of each year, and along with the payment MainGate will provide documentation of the sales that supports the royalty.
>
> Mr. John may audit MainGate's Helga Hat sales, if he chooses, once a year at his expense. The purpose of the audit, of course, [is] to determine that

2

the royalty amount is proper.

The terms of this royalty obligation is for the life of the copyright and it shall end when the copyright ends. During that time, neither side can withdraw from this agreement for the life of the copyright.

In exchange for this agreement, Mr. John releases MainGate from all claims he may have, whether legal or equitable, as of today's date.

This settlement is being entered into to resolve a disputed claim and it shall not be construed as an admission of infringement or wrongdoing.

The terms of this agreement are confidential and will not be disclosed except as necessary for tax or legal advice, and the parties' discussions today that led to the agreement are also confidential and will not be disclosed.

If an inquiry is made to either party regarding this case, the parties agree that they will say that they have achieved an amicable settlement and that it is confidential, or something to that effect.

This agreement, that I hopefully have read in accurately, is the entire agreement of the parties and supersedes all prior negotiations, and the parties have agreed that the terms will be reflected in this transcript and there is no intention of documenting the agreement further.

**THE COURT**: All right. Very good.

Counsel, you have heard all of the terms that were recited by Ms. Friedemann. Do all of those terms accurately reflect this settlement, Mr. Haugen?

**MR. HAUGEN**: Correct, your Honor. In point-by-point fashion, I simply made sure that I checked my notes from the latest conversations back and forth and I believe that everything is covered.

(Settlement Conference Tr. at 2-4, Ex. A to Answer and Countercl. [Doc. No. 4].) Under the settlement agreement, MainGate made the two installment payments of $18,125. (Countercl. ¶ 18 [Doc. No. 4]; Reply ¶ 18 [Doc. No. 7].)

**B. John's Requests for Audit**

A few months after settling the First Lawsuit, John requested a physical audit of MainGate's inventory. (Countercl. ¶ 19 [Doc. No. 4]; Reply ¶ 19 [Doc. No. 7].) On August 13, 2012, MainGate responded by letter, indicating that it had sold only 106 hats since the settlement agreement, and that it had not made any royalty-bearing sales. (Ex. B to Answer and Countercl. [Doc. No. 4].) MainGate also stated that it has several thousand non-royalty bearing hats in inventory and would not need to order royalty-bearing hats for some time. (Id.)

In early 2013, John requested another audit of MainGate's records. (Countercl. ¶ 22 [Doc. No. 4]; Reply ¶ 22 [Doc. No. 7].) MainGate responded with reports showing total sales of Vikings hats in 2012, sales by month, and the break down between adult and youth sizes. (Ex. C to Answer and Countercl. [Doc. No. 4]; Reply ¶¶ 23, 24 [Doc. No. 7].) MainGate stated that it only sold inventory that existed when the parties entered into the settlement agreement. (Countercl. ¶ 25 [Doc. No. 4]; Reply ¶ 25 [Doc. No. 7].)

**C. The Current Litigation**

On April 5, 2013, John sent a letter to MainGate, purporting to terminate the settlement agreement based on MainGate's refusal to permit John to audit its records. (Compl. ¶ 10 [Doc. No. 1].) When MainGate did not stop selling Vikings hats from its existing inventory, John filed this lawsuit, alleging that MainGate was infringing the Copyright. (Id. ¶¶ 26-30.)

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a motion for judgment on the pleadings is appropriate after the pleadings are closed. FED. R. CIV. P. 12(c). A motion for judgment on the pleadings will be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004).

A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009). Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. Id. The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id.

### B. Release of the Copyright Infringement Claim

MainGate argues that the Complaint does not state a plausible claim for relief because John's sole claim in this case is copyright infringement, which was previously settled and released. (MainGate's Mem. in Supp. of Mot. for J. on the Pleadings at 9 [Doc. No. 13].)

The Court agrees with MainGate. John acknowledges that the settlement agreement terms include a "release of Plaintiff's claims which exist as of the date of the agreement." (Pl.'s Mem. in Opp'n to Def.'s Mot. for J. on the Pleadings at 11 [Doc. No. 22].) As of the date of the agreement, February 13, 2012, John had a claim against MainGate for copyright infringement. (Compl. ¶¶ 10-16 in Case No. 10-cv-4902

(SRN/JJK) [Doc. No. 1].) Thus, by entering into the settlement agreement, John released this claim. In the instant litigation, John brings a claim of copyright infringement against MainGate. (Compl. ¶¶ 26-30 [Doc. No. 1].) Because John previously released this claim, he cannot bring the same claim again here. Accordingly, John fails to state a claim for relief for copyright infringement.

### C. John's Breach of Contract Arguments

John also argues that MainGate breached the Copyright license, rendering the settlement agreement void. (Nov. 20, 2013, Hr'g Tr. at 4; Pl.'s Mem. in Opp'n to Def.'s Mot. for J. on the Pleadings at 14-20 [Doc. No. 22].) The Complaint, however, does not assert a breach of contract claim. Because this issue is not properly before the Court, the Court declines to rule on John's breach of contract arguments.

## IV. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant and Counter-Claimant's Motion for Judgment on the Pleadings [Doc. No. 10] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 21, 2013 

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge