UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David John,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>MainGate, Inc.,<br><br>    Defendant and Counter-Claimant. | Case No. 13-cv-01875 (SRN/JJK)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Michael S. Sherrill and Kathryn K. Smith, Sherrill Law Offices, P.L.L.C., White Bear Lake, MN, for Plaintiff and Counter-Defendant.

Lora M. Friedemann and Ted C. Koshiol, Fredrikson & Byron, P.A., Minneapolis, MN, for Defendant and Counter-Claimant.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Defendant and Counter-Claimant MainGate, Inc.'s ("MainGate") Motion to Amend the Judgment and Award Attorney's Fees [Doc. No. 32]. For the reasons set forth herein, MainGate's Motion is granted in part and denied in part.

## II.  BACKGROUND

The facts underlying this copyright infringement claim are thoroughly set forth in this Court's Order of November 21, 2013 [Doc. No. 30], which the Court incorporates here by reference. Briefly stated, this Motion arises out of litigation that began in December 2010. In that month, John sued MainGate, Case No. 10-cv-4902 (SRN/JJK), alleging that MainGate was infringing upon John's copyright for a "Viking hat"—commonly referred to

as a "Helga hat." (Compl. [Doc. No. 1], Ex. A.) This first lawsuit was disposed of in a settlement agreement which the parties entered into on February 13, 2012. As part of that agreement, which was read into the court record, MainGate agreed to pay John $36,250 in two lump sum payments, in exchange for which John granted MainGate a license to the Helga hat copyright, and released it from "all claims he may have, whether legal or equitable, as of [February 13, 2012]." (Answer and Countercl. [Doc. No. 4], Ex. A. at 3.) MainGate received the right to sell its existing inventory of Helga hats, at which point all future Helga hat sales would bear a royalty of $3.00 per hat. (*Id.*) The agreement specified that John was to be allowed to audit MainGate's Helga hat sales once per year in order "to determine that the royalty amount is proper." (*Id.*) Finally, the term of the royalty obligation was declared to be for the life of the copyright. During that time, neither side could withdraw from the agreement. (*Id.*)

Unfortunately, the harmony expected to result from the settlement proved short-lived. Twice over the ensuing year, John requested a physical audit of MainGate's inventory. (Countercl. ¶¶ 19, 22; Pl.'s Reply to Def.'s Countercl. [Doc. No. 7] ¶¶ 22, 23.) In both instances, MainGate responded instead with reports showing total sales of Helga hats and the amount left in inventory, and averring that it would not have a need to order royalty-bearing hats for some time. (Answer and Countercl., Ex. B; Ex. C.) This response apparently proved insufficient to assuage John's concerns—on April 5, 2013, John wrote to MainGate, purporting to terminate the settlement agreement based on MainGate's refusal to permit John to audit its records. (Compl. ¶ 10.) Upon MainGate's unwillingness to stop

selling Helga hats from its existing inventory, John commenced the present action, alleging, once again, that MainGate had infringed his copyright. (*Id.* at ¶¶ 26–30.) MainGate promptly responded with a set of counterclaims, asking first that this Court issue a declaratory judgment to the effect that "John's attempted termination was ineffective and that the license granted in the Settlement Agreement continues for the life of the copyright." (Countercl. ¶ 30.) Additionally, MainGate asserted its intention to seek an award of attorney's fees at the conclusion of the case. (*Id.* at ¶ 33.)

On September 10, 2013, MainGate brought a motion for Judgment on the Pleadings [Doc. No. 10], which this Court subsequently granted [Doc. No. 30]. Because John's sole claim in this case was one for copyright infringement—a claim he had expressly released as part of the settlement agreement—the Court agreed with MainGate that John had failed to state a plausible claim for relief. (Order of November 21, 2013 at 5–6.) As neither party had addressed MainGate's counterclaims in their briefing or at oral argument, the Court did not rule upon either claim. MainGate subsequently brought the present Motion to Amend the Judgment and Award Attorney's Fees, pursuant to Fed. R. Civ. P. 59(e) and 60, and 17 U.S.C. § 505.

### III.   DISCUSSION

#### A.   Standard of Review

An initial question confronting this Court is which Federal Rule of Civil Procedure provides it with the authority to alter its Order granting MainGate's Motion for Judgment on the Pleadings. MainGate argues that the requisite power may be found in either Rule 59(e)

or Rule 60(b).[1]  The Court does not agree with that assessment, however.  Both Rules 59 and 60 properly apply only to final judgments or orders.  *See Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("[A] Rule 59(e) motion to challenge . . . an order may only be filed after the district court enters the final judgment."); *St. Mary's Health Ctr. v. Bowen*, 821 F.2d 493, 498 (8th Cir. 1987) ("Rule 60(b) applies only to relief from a final judgment or order.")  Because MainGate contends that the Court has not adjudicated its counterclaims, the Order issued on November 21, 2013 cannot be considered a final judgment for purposes of either Rule 59 or 60.[2]  *See, e.g.*, *Auto Servs. Co.*, 537 F.3d at 856 (finding that district court's order dismissing Plaintiff's claims against some but not all defendants was not a final judgment for purposes of Rule 59(e)).

This does not mean that the Court is without authority to review or amend its prior orders, however.  Rule 54(b) provides as follows:

> (b) JUDGMENT ON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES.
> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  *Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*

---

[1] Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Similarly, Rule 60(b) states, in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . (6) any other reason that justifies relief."
[2] For purposes of the Federal Rule of Civil Procedure, a "judgment" "includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).

Fed. R. Civ. P. 54(b) (emphasis added).  Here, because the Court did not expressly direct entry of a final judgment as to only the claims listed in John's Complaint, the Court retains its "general discretionary authority to review and revise its interlocutory rulings prior to the entry of final judgment." *Auto Servs. Co.*, 537 F.3d at 856–57.  *See also Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 100 (1954) (observing that "[t]he power remained in the trial court until the entry of [its] final judgment to set aside, for appropriate reasons," orders previously entered in the case); *Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 803, 807 (8th Cir. 1993) ("Under the last clause of Rule 54(b), a non-final order 'is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'").

That MainGate brought its Motion under Rules 59 and 60 does not bar the Court from exercising its inherent authority to convert the Motion to one under Rule 54(b).  It is well-established that "the substance of a motion rather than the form of a motion is controlling."  *BBCA, Inc. v. United States*, 954 F.2d 1429, 1431–32 (8th Cir. 1992).  *See also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (8th Cir. 1983) ("Though [Defendant] styled its motion a Rule 59(e) motion, nomenclature is not controlling.") (internal quotation and citation omitted).  Thus, the Court concludes that, no final judgment having been entered, it may revise its prior order to address MainGate's counterclaims.

### B.  Declaratory Judgment

MainGate's first counterclaim asks that the Court issue a declaratory judgment to the effect that "John's attempted termination was ineffective and that the license granted in the

Settlement Agreement continues for the life of the copyright." (Countercl. ¶ 30.) The Declaratory Judgment Act grants the Court the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Federal courts, however, only have jurisdiction to hear actual cases and controversies. *Cty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004) (citing U.S. Const. art. III, § 2, cl. 1).  In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court addressed the standard for evaluating whether a declaratory judgment claim states a case or controversy.  549 U.S. 118, 127 (2007).  The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quotation omitted).  The underlying question, according to the Supreme Court, "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

These factors have been adequately met here.  John's purported termination of the Settlement Agreement—upon which his claim of copyright infringement ultimately rested—demonstrated a sufficiently immediate, substantial controversy.  At oral argument on November 19, 2013, John raised the prospect of continuing his dispute with MainGate under a theory of breach of contract—his claim for copyright infringement having proved

6

unsuccessful.  MainGate rightly notes in its briefing that it should not be forced to endure the Damoclean threat of future litigation on the basis of breach of the settlement agreement when the Court has the power to provide declaratory relief in the present action.  *See Cold Spring Granite Co. v. Matthews Int'l Corp.*, No. 10-4272, 2011 WL 4549417, at *5 (D. Minn. June 1, 2011) (noting that "reasonable apprehension of suit" suffices to establish a justiciable Article III controversy for purposes of the Declaratory Judgment Act).  Accordingly, the Court will exercise its discretionary authority under 28 U.S.C. § 2201 to address MainGate's first counterclaim.

The Court thus turns to a consideration of the basis for a declaratory judgment in this matter.  MainGate requests a ruling under the standard of judgment on the pleadings.  Fed. R. Civ. P. 12(c).  As previously noted in this Court's Order of November 21, 2013, a motion for judgment on the pleadings may be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004).  Here, the Court agrees with MainGate that there are no material issues of fact and that judgment may be rendered solely on the basis of the terms of the Settlement Agreement.  That agreement clearly provides that John's right to audit MainGate's sale of Helga Hats does not arise until there are royalty bearing sales.  *See* Answer and Countercl., Ex. A. at 3 ("The purpose of the audit, of course, [is] to determine that the royalty amount is proper.).  Further, there is no ambiguity in the terms of the Settlement Agreement establishing that neither party may withdraw from the agreement so long as the copyright remains in effect.

7

*See Id.* ("The term of this royalty obligation is for the life of the copyright and it shall end when the copyright ends. During that time, neither side can withdraw from this agreement for the life of the copyright.") Accordingly, the Court concludes that MainGate did not breach the Settlement Agreement when it refused John's request to audit sales of its existing inventory of non-royalty bearing hats; that John's attempt to terminate the Settlement Agreement was without effect; and that MainGate's license to sell Helga hats continues until John's copyright expires.

John does not come away from this dispute entirely empty-handed, however. MainGate's voluntary offer to provide John annually with a letter detailing the number of non-royalty bearing hats remaining in inventory, made and accepted at the hearing held on April 10, 2014, should address and satisfy John's underlying concerns.

**C.   Attorney's Fees**

MainGate also requests that the Court address its counterclaim for attorney's fees, which the Court may award at its discretion under 17 U.S.C. § 505.[3] MainGate notes that, in evaluating a request for attorney's fees, the factors to be considered include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). MainGate asserts that it is entitled to attorney's fees because John's claim was objectively

---

[3] 17 U.S.C. § 505 provides that, "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

unreasonable, and because considerations of deterrence require it.  In support, MainGate notes that it "communicated with Mr. John several times regarding the release as a bar to Mr. John's copyright infringement claim, and consistently expressed MainGate's intention to seek an award of fees and costs if Mr. John continued to pursue the claim." (Def.'s Mem. at 5.)

In response, John argues that an award of attorney's fees is unwarranted because his claim for copyright infringement, although ultimately unsuccessful, was a colorable claim brought in good faith.[4]  In particular, John notes that his interpretation of the Settlement Agreement as providing a right to audit inventory sales was not objectively unreasonable.  He contends that his good-faith understanding of the agreement was that the release granted to MainGate was subject to and contingent upon MainGate's agreement to allow an annual audit of its inventory of Helga hats.  Accordingly, John's claim was not brought with improper motive or without some grounding in reasonableness, and attorney's fees would be unjustified as a result.

The Court agrees with John that the claim raised in his suit does not rise to the level of being either frivolous or objectively unreasonable.  While the Court ultimately disagrees with John's interpretation of the terms of the Settlement Agreement, John's arguments are not so clearly untenable as to be utterly without merit.  *See, e.g.*, *Hartman v. Hallmark*

---

[4] John also raises a procedural argument that MainGate's request for attorney's fees is not an independent cause of action, and thus cannot be raised as a counterclaim.  Instead, John contends that MainGate's Motion arises under Fed. R. Civ. P. 54(d), and because it was filed more than "14 days after the entry of judgment," must be dismissed as untimely.  Fed. R. Civ. P. 54(d)(2)(B)(i).  Because the Court has determined that its Order of November 21, 2013 was not a final judgment, however, it considers this argument moot.

*Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987) (affirming denial of fees where, despite expressing doubt about the quality of plaintiff's case, the district court found that plaintiff had not acted in bad faith, and claim was colorable and not baseless); *Thomsen v. Famous Dave's of Am., Inc.*, No. 07-1989, 2009 WL 1514515, at *4 ((D. Minn. June 1, 2009) (same).  Further, in light of the Court's decision to grant MainGate's request for a declaratory judgment, an award of fees is unnecessary as deterrence against the possibility of groundless claims in the future.  Accordingly, the Court denies MainGate's Motion for Attorney's Fees.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant and Counter-Claimant's Motion [Doc. No. 32] is **GRANTED** in part as to amending the Court's Order of November 21, 2013 [Doc. No. 30], and **DENIED** in part as to attorney's fees; and

2. Defendant and Counter-Claimant's Counterclaim for declaratory judgment is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  August 1, 2014                             s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge